```
         FILED              RECEIVED
_____ ENTERED        _____ SERVED ON
                     COUNSEL/PARTIES OF RECORD

          DEC 2 8 2010

         CLERK US DISTRICT COURT
           DISTRICT OF NEVADA
BY: _____  DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| VFS Financing, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>Specialty Financial Corp. and Nello Gonfiantini,<br><br>    Defendants. | 3:09-cv-266-RCJ-RAM<br><br>**ORDER** |

Currently before the Court is a Motion for Summary Judgment (#48) filed by Plaintiff VFS Financing, Inc. ("VFS") on May 28, 2010. Defendants Specialty Financial Corporation ("Specialty") and Nello Gonfiantini ("Gonfiantini") filed an Opposition to Motion for Summary Judgment (#67) on September 15, 2010. Plaintiff filed a Reply to the Opposition to Motion for Summary Judgment (#68) on September 24, 2010.

The Court heard oral argument on the motion on December 13, 2010.

## BACKGROUND

On September 15, 2006, Defendant Speciality signed a Promissory Note in favor of VFS for the principal amount of $8,900,000. (See Affidavit of Kent R. Robison ("Robison Affidavit") at Ex. 1 attached to Opp'n (#67)). VFS made the loan to finance Specialty's acquisition of a Dassault-Breguet aircraft. Id. In connection with the loan, VFS and Specialty entered into an Aircraft Security Agreement dated September 15, 2006 (the "Security Agreement"). Pursuant to the Security Agreement, Specialty granted VFS a security interest in the Aircraft. (See Affidavit of William A. Eynon ("Eynon Affidavit") at ¶ 5b attached to Mot. for Summary Judgment (#48-2)).

1    Principal and interest on the Promissory Note was due and payable in consecutive
2    monthly installments of $72,770.21 followed by a balloon payment of $4,887,770.21. (Mot.
3    for Summary Judgment (#48-1) at 3). Specialty agreed that if it failed to make a payment
4    under the Note within ten days of its due date, it would pay a five percent late fee on such late
5    payment. *Id.* Failure to make a payment when due under the Note and to cure such failure
6    within fifteen days constituted an event of default under the agreements. *Id.*

7    Defendant Gonfiantini executed a Personal Guaranty by which he personally
8    guaranteed payment of the Promissory Note on September 15, 2006. (*See* Robison Affidavit
9    at Ex. 2). In the Personal Guaranty, Gonfiantini agreed that "his obligations under this
10   Guaranty shall be primary, absolute, continuing and unconditional . . . ." *Id.* In addition,
11   Gonfiantini agreed that his obligations under the agreement were "irrespective of and
12   unaffected by" the "time, place and manner of any sale or other disposition of any leased
13   equipment, collateral or security given in connection with the Obligations . . . ." *Id.*

14   Specialty and Gonfiantini do not dispute that they defaulted on the Promissory Note and
15   Personal Guaranty. Specialty failed to make payments when due under the Promissory Note.
16   (Mot. for Summary Judgment (#48-1) at ¶18). Gonfiantini failed to satisfy Specialty's payment
17   obligations under the Personal Guaranty. *Id.* at ¶ 19.

18   Based on the default, Defendants and VFS began negotiating a voluntary surrender of
19   the aircraft on November 14, 2008. (Robison Affidavit at Ex. 7). On April 24, 2009, VFS and
20   Defendants entered into a Voluntary Surrender Agreement pursuant to which Specialty agreed
21   to voluntarily surrender the aircraft to VFS. (See Eynon Affidavit at ¶ 5e). On April 29, 2009,
22   after the aircraft was surrendered, VFS delivered a Notice of Default and Acceleration of
23   Obligations to the Guarantor, and demanded payment of the sum of $8,234,506.37, which
24   represented the accelerated amount due by Speciality at that time. (*See* Eynon Affidavit at
25   ¶ 5f).

26   Following the surrender of the aircraft, VFS listed the aircraft with Clay Lacey Aviation.
27   (Opp'n (#67) at ¶ 22). Defendants state that "it was industry-wide knowledge in late 2008 and
28   early 2009 that the market conditions were rapidly deteriorating for sales and resales of

1  privately owned aircraft." *Id.* at ¶ 15. Moreover, Defendants state that there was a "rapidly
2  declining market" in 2009. *Id.* at ¶ 17. Clay Lacey listed the aircraft for sale "at a fair market
3  value of $6.5 million." *Id.* at ¶ 5.

4  Clay Lacey listed the aircraft with listing agents Amstat and Jet Net. *Id.* at ¶ 26. The
5  listing agents both identified the aircraft and provided information pertaining to the aircraft on
6  their websites. *Id.* ¶ at 26. Defendants state that on Jet Net's listing, Jet Net falsely advertised
7  that the aircraft had been involved in a forced landing due to engine failure. *Id.* A
8  representative for VFS testified that he was disappointed that the aircraft had been falsely
9  identified as being involved in a forced landing and stated that such a statement would affect
10  the aircraft's marketability. (*See* Robison Affidavit at Ex. 12, p. 21).

11  In addition, Defendants note that Clay Lacy failed to physically inspect the aircraft for
12  an entire year during the listing. (Opp'n (#67) at ¶ 35). Defendants also state that VFS
13  received a "Letter of Intent" to purchase the aircraft for $5 million by an Italian buyer in October
14  2009. *Id.* at ¶ 39. Defendants state that VFS refused to sign the Letter of Intent. According
15  to the deposition testimony of the VFS representative, VFS refused on the grounds that it did
16  not sign letters of intent. (*See* Robison Affidavit at Ex. 12, p. 67). Rather, VFS would "turn
17  around and give them a purchase agreement." *Id.* It is unclear from the evidence submitted
18  if VFS did provide a purchase agreement or what happened to the offer made in the Letter of
19  Intent.

20  On December 8, 2009, Clay Lacey listed the value of the aircraft at $5.8 million. (Opp'n
21  (#67) at ¶ 42). VFS allegedly received another offer for $4,950,000 but turned it down
22  because they believed the aircraft was worth at least $5 million. *Id.* at ¶ 43. Plaintiff finally
23  sold the aircraft for $4.5 million on April 30, 2010. *Id.* at ¶ 44.

24  On summary judgment, VFS states that it has complied with all of its obligations under
25  the Agreements and Guaranty. (*See* Eynon Affidavit at ¶ 11). VFS argues that Defendants
26  breached their contractual obligations and that there are no issues of fact regarding the default
27  by Defendants under the loan agreements. Based on that, VFS seeks an award, as of May
28  28, 2010, of $9,965,677.51, consisting of: (1) the unpaid principal balance of $8,142,129.80;

(ii) interest at the contract rate under the Note in the amount of $679,421.69; (iii) interest at the default rate under the Note in the amount of $1,093,186.88; and (iv) late fees in the amount of $50,939.14. In addition, VFS seeks the attorneys' fees and costs that it has incurred in enforcing its rights under the Agreements and Guaranty as provided in those contracts.

In response, Defendants do not contest that they defaulted on the loan agreement and guaranty with VFS. Rather, Defendants argue that VFS is not entitled to any deficiency following the sale of the aircraft because "VFS' retention and disposition of the aircraft was not commercially reasonable, as required by Article 9 of the Uniform Commercial Code." (Opp'n (#67) at 8). Because the sale was not commercially reasonable, Defendants state that VFS is not entitled to damages and summary judgment should be denied.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate "if pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inference may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981). However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(internal quotation marks omitted).

VFS argues that it is entitled to summary judgment because Defendants' liability under their contractual obligations is clear and unambiguous. (Mot. for Summary Judgment (#48) at 2). VFS states that Defendants concede that they defaulted under the agreements and that pursuant to that default VFS is entitled to the full amount of the debt. *Id.* at 6. In addition, VFS argues that Defendants have failed to state a meritorious defense to its claims. *Id.* at 7. According to VFS, the main substantive affirmative defense alleged by Defendants - the allegation that the sale of the aircraft was not commercially reasonable - was incorporated into a counterclaim and voluntarily dismissed by Defendants with prejudice. *Id.* at 8. Because the counterclaim was voluntarily dismissed with prejudice, VFS argues that Defendants are not entitled to raise it as an affirmative defense. Finally, VFS argues that even if Defendants can raise the defense of commercial reasonableness, Defendants did not submit an expert opinion on this issue, and thus cannot rebut the expert report provided by VFS that the sale was commercially reasonable.

In response, Defendants argue that summary judgment is not appropriate at this time because VFS has "neglected to present any evidence that its disposition of the

collateral was commercially reasonable." (Opp'n (#67) at 1). According to Defendants, once the question of commercial reasonableness was raised in the pleadings, VFS "must come forward with admissible and believable evidence that its disposition of the collateral was commercially reasonable." *Id.* Defendants state that they raised the issue of commercial reasonableness in an affirmative defense. They further argue that the voluntary dismissal of their counterclaim on that issue is not res judicata for purposes of this case. *Id.* at 2. Rather, Defendants argue that the counterclaim was simply dismissed because it was duplicative of their affirmative defense. *Id.* Moreover, Defendants argue that VFS failed its burden of proving the commercial reasonableness of the retention and disposition of the aircraft. *Id.* at 12. Because VFS has not allegedly provided evidence regarding this issue, VFS argues that summary judgment must be denied.

## II.   Affirmative Defense

On June 16, 2009, Defendants filed an Answer (#25) to VFS's Amended Complaint which included the following affirmative defense: "Plaintiff has not conducted a sale of the Aircraft in a commercially reasonable manner and therefore, under the Uniform Commercial Code, there exists a legal presumption that the value of the Aircraft is equal to or exceeds the amount owed on the debt evidenced by the Agreements." (Answer (#25) at 3). Defendants also filed a counterclaim with their Answer. Defendants' counterclaim stated that VFS had breached the duty of good faith and fair dealing implied by law in the Promissory Note, Security Agreement and Guaranty because "Plaintiff has failed and refused to proceed with a commercially reasonable disposition of the Aircraft in good faith." *Id.* at 4.

On July 31, 2009, VFS filed a motion to dismiss Defendants' counterclaim. (Mot. to Dismiss (#29)). In its motion, VFS argued that the counterclaim was "at best, a defense to VFS's claims" and not "an independent claim." *Id.* at 6. According to VFS, Defendants' assertion that VFS breached the implied duty of good faith and fair dealing was a defense to VFS's causes of action for breach and spoke to "mitigation of damages." *Id.* at 7. VFS argued that the counterclaim was duplicative of an affirmative defense already provided in

Defendants' answer and that Defendants were attempting to "re-package" their affirmative defense as a counterclaim. *Id.*

Before the Court could rule on the motion, the parties entered into a Stipulation Regarding Defendants' Counterclaim (#39). In the stipulation, the parties agreed that the Defendants' counterclaim be dismissed with prejudice. The stipulation was signed by counsel for both parties.

Now, VFS argues that Defendants cannot assert the affirmative defense of commercial reasonableness because Defendants voluntarily dismissed their counterclaim for breach of the implied covenant of good faith and fair dealing on that ground with prejudice. According to VFS, because the counterclaim was dismissed with prejudice, Defendants' are barred from contesting the commercial reasonableness of the sale. Defendants, on the other hand, argue that under Rule 8, a counterclaim can be dismissed without affecting the validity of an affirmative defense. As such, Defendants state their affirmative defense regarding commercial reasonableness is valid and not barred by the doctrine of res judicata.

Rule 8(c) provides that in responding to a pleading, a party must affirmatively state any affirmative defense. Fed. R. Civ. P. 8(c)(1). Under that rule, "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2). In *Rayman v. Peoples Sav. Corp.*, the court stated that the "label 'counterclaim' has no magic." 735 F.Supp. 842, 852 (N.D.Ill. 1990)(quoting *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985)). That court held that "[w]hat is really an answer or defense to a suit does not become an independent piece of litigation because of its label." *Id.* "When the original complaint puts in play all of the factual and legal theories, it makes no difference whether another party calls its pleadings counterclaims, affirmative defenses, or anything else." *Id.* "The original complaint brought the dispute into the court, and the parties to that complaint are parties to each aspect of the imbroglio." *Id.* Based on the foregoing, the court in

*Rayman* denied the defendant leave to assert a counterclaim that merely duplicated an affirmative defense. *Id.*

The Court finds that Defendants' affirmative defense is not barred by the voluntary dismissal of Defendants' counterclaim. As noted in the foregoing, VFS sought dismissal of the counterclaim on the grounds that it was duplicative of Defendants' affirmative defense and would serve no purpose but to complicate the litigation of this matter. At no time in its motion to dismiss did VFS argue that Defendants had wrongfully asserted commercial reasonableness as an affirmative defense. In addition, Rule 8 allows a court to redesignate a counterclaim as an answer if it is wrongly pled. In this case, the parties agreed that the commercial reasonableness counterclaim was a wrongfully pled affirmative defense. Thus, Defendants agreed to dismiss that counterclaim. Moreover, unlike the parties in *W & W Lumber*, Defendants are not seeking to amend their answer to state an affirmative defense for commercial reasonableness for the first time. That affirmative defense was pled in its Answer at the same time the counterclaim was filed. Based on the foregoing, the Court finds that Defendants' affirmative defense is not barred by the voluntary dismissal of Defendants' counterclaim against VFS.

### III. Commercial Reasonableness

The next issue is whether VFS is entitled to summary judgment on the breach of contract claims asserted against them. The parties concede that, under the terms of the contracts, New York law applies to this case.

A prima facie claim for breach of contract has four elements: (1) the existence of a contract, (2) the plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damages to the plaintiff from defendant's breach. *Walsh v. W. Valley Mission Cmty. College*, 66 Cal.App. 4th 1532, 1545 (Cal.Ct. App. 1998); *see also Hotel 71 Mezz Lender LLC v. Mitchell*, 880 N.Y.S.2d 67, 68-69 (N.Y.A.D. 2009)(holding that on summary judgment, lender established its prima facie entitlement to judgment as a matter of law, where it showed that it made a loan to borrower, that guarantor executed a personal guaranty of repayment of the loan in the event of borrower's default, and that borrower

defaulted on the loan).

In this matter, there is no dispute that VFS and Defendants were parties to a loan agreement and guaranty, and that Defendants breached those agreements. As such, VFS has satisfied its burden on the breach of contract claims. The Court finds that Defendants are liable for breach of loan agreements and personal guaranty for failing to make payments as required under those documents.

The only issue pending before this Court relates to Defendants' affirmative defense of commercial reasonableness. Defendants argue that summary judgment is inappropriate on the breach of contract claims because VFS has failed to show that the sale of the aircraft was commercially reasonable. VFS, on the other hand, states in its Reply, that is has supplied an expert report stating that the sale was commercially reasonable under the circumstances.

In New York, secured transactions are governed by UCC article 9. *Ford Motor Credit Co., Inc. v. Racwell Const., Inc.*, 808 N.Y.S.2d 294, 295 (N.Y.A.D. 2005). Under that code, the creditor bears the burden of proving that the disposition was commercially reasonable when seeking a deficiency judgment. *Id.* Section 9-626(a)(2) of the New York UCC states that "[i]f the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted" in a commercially reasonable manner. "Every aspect of the disposition, including the method, manner, time, place and terms must be commercially reasonable." *Leasing Serv. Corp. v. Broetje*, 545 F.Supp. 362, 367 (D.C. N.Y. 1982). "The U.C.C. 'imposes an obligation of good faith on the performance of every duty under the Code . . . This means that the creditor must act to protect not only its interest, but the interest of the debtor as well.'" *Id.* (quoting *Connex Press, Inc. v. Intern. Airmotive, Inc.*, 436 F.Supp. 51, 56 (D.D.C. 1977)). The burden of establishing commercial reasonableness is absolute and "cannot be waived." *Citicorp Leasing, Inc. v. United Am. Funding*, 2005 WL 1847300 *8 (S.D.N.Y. 2005)(citing *Weinstein v. Fleet Factors Corp.*, 620 N.Y.S.2d 946, 946 (N.Y.A.D. 1994); *see also Marine Midland Bank v. CMR Indus., Inc.*, 559 N.Y.S.2d 892, 900

(N.Y.A.D. 1990)("[T]he UCC requirement that any post-default disposition of collateral be commercially reasonable . . . may not be waived."); *Bank of China v. Chan*, 937 F.2d 780, 785 (2d Cir. 1991)("Were the New York Court of Appeals to address this question, we think it would hold that a guarantor may not waive the defense of commercial reasonableness under the New York Uniform Commercial Code.").

In this matter, in VFS's initial motion, it provided no evidence of the commercial reasonableness of the sale of the aircraft. (The initial motion argued that the issue of commercial reasonableness is not applicable because Defendants' dismissed their counterclaim on that issue). However, in its Reply (#68), VFS attaches a copy of its expert witness report which states that the sale of the aircraft was commercially reasonable. (*See* Ex. A attached to the Declaration of Edward J. Estrada (#69)). VFS's expert report is an opinion letter written by Corporate Concepts International, Inc. ("CCI"), which is an aviation services company that "has been active and specializing in business aircraft since 1978." *Id.* According to CCI, its aviation services include expert witness services, appraisal services, aircraft sales, and aircraft acquisitions. *Id.* In its report, CCI addresses "the commercial reasonable sales and marketing efforts and the time required for the sale of a Falcon 50 during the market conditions of generally the first quarter of 2009 through the first quarter of 2010." *Id.* In the report, VFS's expert opined that the "advertising and industry-available marketing efforts of Clay Lacy Aviation were commercially reasonable to industry standards and practices." *Id.*

In their Opposition (#67), Defendants make factual statements alluding to their argument that the sale of the aircraft was not commercially reasonable, but do not specifically address this contention in their brief. Rather, the Opposition argues that summary judgment should be denied because VFS did not provide evidentiary support that it acted in conformity with the UCC and that its disposition and sale of the aircraft was conducted in a commercially reasonable manner. (Opp'n (#67) at 21). However, it appears from its factual statements that Defendants challenge the commercially reasonable nature of the sale on the grounds that (1) the aircraft was falsely advertised on

one of the listing agent's web sites; (2) VFS's agent Clay Lacey did not physically inspect the aircraft for over a year while listing it for sale, and (3) VFS knew that the market for private aircraft was deteriorating in 2008 and 2009.

The Court finds that there is an issue of fact regarding whether the sale of the aircraft was commercially reasonable. Because VFS did not address this issue or provide evidence of commercial reasonableness of the sale until its Reply brief, Defendants did not specifically respond to this issue in their Opposition.

Although there is an issue of fact regarding the commercial reasonableness of the sale of the aircraft, the Court grants summary judgment to VFS on its underlying claims of breach of contract. Under New York law, whether a defendant is liable for default under a loan agreement or guaranty "is an issue which may be resolved apart from and in advance of any determination as to whether the sale of the collateral was conducted in commercially reasonable fashion, the latter being relevant . . . only to the determination of damages." *General Trading Co., Inc. v. A & D Food Corp.*, 738 N.Y.S.2d 845, 845 (N.Y.A.D.2d 2002); *see also Citicorp Leasing*, 2005 WL 1847300 * 8 (stating that any issue as to commercial reasonableness is "relevant to the amount of damages" to which the plaintiff is entitled and not to the defendant's liability); *European Am. Bank v. Kahn*, 573 N.Y.S.2d 274, 277 (N.Y.A.D. 1991)(plaintiff's compliance with the commercial reasonable requirement of the UCC bears upon the assessment of damages but does not as a matter of law bar the grant of partial summary judgment as to liability).

///
///
///
///
///
///
///
///

11

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Motion for Summary Judgment (#48) is GRANTED in part and DENIED in part. The Court grants summary judgment on the breach of contract claim but denies summary judgment on Defendants' affirmative defense that the sale was not commercially reasonable.

DATED: December 28, 2010.

_____
United States District Judge