UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| VFS FINANCING, INC., a Delaware corporation <br><br> Plaintiff, <br><br> v. <br><br> SPECIALTY FINANCIAL CORP., a Nevada corporation and NELLO GONFIANTINI, <br><br> Defendants. | 3:09-cv-00266-RCJ-VPC <br><br> **ORDER** <br><br> April 4, 2013 |

Before the court is plaintiff VFS Financing, Inc.'s motion to compel discovery from Stacey Gonfiantini (#198)[1] and Stacey Gonfiantini's ("Stacey") motion for protective order (#227). Stacey opposed plaintiff's motion to compel discovery (#227) and plaintiff replied (#256 (*sealed*)). Plaintiff opposed Stacey's motion for protective order (#256) and Stacey replied (#267 (*sealed*)). The court has thoroughly reviewed the record. The court grants plaintiff's motion to compel discovery from Stacey Gonfiantini (#198), and denies Stacey's motion for protective order (#227).

I. **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff seeks discovery in aid of its federal judgment pursuant to Fed.R.Civ.P. 69(a). Plaintiff contends that judgment debtor Nello Gonfiantini ("Nello") improperly transferred non-exempt assets to his wife, Stacey, in an effort to avoid paying plaintiff the $5.5 million judgment entered against him and his company—Specialty Financial Corporation ("Specialty Financial") (#198, p. 3). Plaintiff states that in order to locate Nello's concealed assets, it must obtain discovery

---

[1] Refers to the court's docket numbers.

-1-

from Stacey. Thus, plaintiff asks the court for an order compelling Stacey to fully respond to plaintiff's requests for production of documents ("RFPs"). *See* Fed.R.Civ. P. 34 and 37.[2]

Stacey contends that, as a non-party, plaintiff's RFPs subject her to annoyance, embarrassment, oppression, and undue burden or expense (#227, p. 1). Stacey argues that plaintiff's RFPs request broad categories of her personal financial documents, and that these requests do not appear reasonably calculated to lead to the discovery of admissible evidence regarding the judgment debtors' income and property. *Id.* at 1-2. She also argues that many of the requested documents can be obtained from "some other source that is more convenient, less burdensome, or less expensive." *Id.* at 2. Stacey asks the court for an order denying plaintiff's motion to compel discovery and granting her motion for a protective order.

*The Gonfiantinis' Agreements*

On August 1, 2005, Nello Gonfiantini and Stacey Poole entered into a prenuptial agreement (#264-1 (*sealed*)). On September 17, 2005, they were married (#198, p. 4). On May 6, 2006, Stacey created The Stacey L. Gonfiantini Trust dated May 6, 2006 (the "Stacey Trust"). *Id.* at 5.

On September 15, 2006, plaintiff loaned Specialty Financial $8.9 million for the purchase of a private jet aircraft. Nello was the president of Specialty Financial and the primary intended passenger of the jet aircraft. *Id.* The Note provided for one-hundred twenty (120) consecutive monthly payments of $72,770.21, followed by one balloon payment of $4,887,770.21 (#256, p. 8 (*sealed*)). Nello also executed a personal guaranty ("Guaranty"), guaranteeing Specialty Financial's timely repayment of the loan (#198, p. 5). On September 15, 2008, Lehman Brothers Holdings, Inc. ("Lehman Brothers") filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York (#256, p. 8 (*sealed*)). The Lehman Brothers' bankruptcy, coupled with

---

[2] Fed.R.Civ.P. 34 governs requests for production. Fed.R.Civ.P. 37(a) permits a party to move for a court order compelling discovery taken under Rule 34 when a non-party fails to comply with such discovery.

instabilities in the global lending market, set off a worldwide financial crisis. *Id.* This crisis especially affected the real estate lending business—Specialty Financial's business. *Id.* In December 2008, Specialty Financial advised plaintiff that it could no longer make the monthly payments for the jet aircraft (#256-1, pp. 12-14 (*sealed*)). Specialty Financial proposed lower payments, which plaintiff rejected. *Id.* Shortly thereafter, Specialty Financial ceased making the monthly payments, and defaulted under the terms of the Loan. *Id.* Likewise, Nello failed to make the monthly payments, and defaulted under the terms of the Guaranty. *Id.*

On March 30, 2009, Nello and Stacey executed an amendment to their prenuptial agreement ("First Amendment"), which, among other things, transferred certain assets to Stacey's Trust (#264-2, pp. 2-3 (*sealed*)).[3] On April 8, 2009, plaintiff filed its complaint against Specialty Financial, seeking replevin of the jet aircraft and a monetary judgment, based on Specialty Financial's default under the terms of the Loan (#198, p. 5; #1). On May 29, 2009, plaintiff filed an amended complaint which added Nello as a co-defendant, based on his default under the terms of the Guaranty (#198, p. 5; #20). On September 30, 2009, Nello and Stacey executed a second amendment to their prenuptial agreement ("Second Amendment"), which transferred certain other assets to Stacey's Trust (#264-3, pp. 1-2 (*sealed*)). On February 14, 2012, the court entered a judgment in plaintiff's favor and against Specialty Financial and Nello, jointly and severally, in the amount of $5.5 million (#118). The judgment remains unsatisfied and is the subject of plaintiff's ongoing collections efforts (#256, p. 11 (*sealed*)).

On September 19, 2012, Nello's counsel informed plaintiff that Nello and Stacey hold no community property assets, and that Nello would not produce any discovery relating to his wife's

---

[3] In drafting this order, the court is intentionally vague as to the terms and assets transferred within the Gonfiantinis' pre- and post-nuptial agreements, so as to preserve the Gonfiantinis' privacy in this matter. The pre- and post-nuptial agreements and the documents discussing those agreements have been filed under seal, and the court notes that the parties are well aware of their contents.

finances or assets, as he did not have possession, custody or control of those assets (#198-6, pp. 2-3). Accordingly, on October 11, 2012, plaintiff served Stacey with a Notice of Deposition ("Notice"), along with a Request for Production of Documents ("RFPs") (#227-1, pp. 2-17; #169). On November 19, 2012, Stacey objected to plaintiff's RFPs on the grounds that they were "overbroad and unduly burdensome," as she is "not the debtor in this matter, nor is she a party" (#198-7, pp. 2-5). Thereafter, counsel discussed Stacey's objections in an effort to resolve the impasse, but could not reach an agreement (#198, p. 8). On December 7, 2012, Stacey responded to RFP No. 9 by providing a copy of her marriage license, and responded to RFP No. 10 by stating that her husband had already produced all of their pre- and post-nuptial agreements (#198-8, p. 2).

On December 17, 2012, plaintiff filed the instant motion to compel discovery from Stacey Gonfiantini (#198). In this motion, plaintiff asks the court to compel Stacey to respond to RFPs Nos. 1-8 and 11-13 (#198, p. 8).[4] Plaintiff contends this discovery is necessary to conduct Stacey's deposition[5] and determine Nello's attachable assets. *Id.*

The RFPs in dispute are:

1. All documents evidencing any estate, will or trust in which You may be named beneficiary, legatee, distributee, executor, trustee, or otherwise named.

3. All financial statements prepared by You or on Your Behalf for the calendar years 2006 through 2012.

4. All account statements relating to any checking, savings, or other depository accounts

---

[4] It appears that plaintiff actually desires discovery for RFP Nos. 1, 3-7, and 12-13. RFP No. 2 requests, "All tax returns (and/or extensions) filed by You or on Your behalf with federal, state, or local filing authorities for the calendar years 2006 through 2011" (#169, p. 6). Stacey responded to this RFP by stating that she and her husband filed joint tax returns, and that plaintiff already has possession of those documents. RFP No. 8 requests, "All documents evidencing a marriage between You and Defendant, including, but not limited to all marriage licenses and certificates." *Id.* The court notes that Stacey has already turned over a copy of her marriage license. RFP No. 11 requests, "All documents evidencing any prenuptial or postnuptial agreement between You and any other person." *Id.* The parties agree that Nello has disclosed the prenuptial agreement, First Amendment and Second Amendment (#198-8, p. 2). If any pre- or post-nuptial agreements between Stacey and a former spouse exist, such evidence is irrelevant.
[5] Stacey's deposition occurred on January 31, 2013 (#267-1 (*sealed*)).

maintained at any financial institution for You, directly or indirectly, and any entities owned or controlled by You, or with which You were affiliated, for each month for the calendar years 2006 through 2012.

5. All documents evidencing any physical asset or personal property owned in whole or in part by You, including, but not limited to: (a) the title of the asset; (b) documents evidencing the present location of the asset; and (c) documents evidencing any lien on the asset.

6. All documents evidencing any real estate owned in whole or in part by You, including, but not limited to: (a) the title of the real estate; (b) documents evidencing a mortgage on the real estate; and (c) documents evidencing a tenancy relationship relating to the real estate, including the names and monthly rentals paid by each tenant.

7. All documents evidencing any motor vehicles, farm equipment, or machinery owned in whole or in part by You, including, but not limited to: (a) the title to the vehicle, equipment, or machinery; and (b) documents evidencing a lien thereon.

12. All documents evidencing any gift, bequest, devise, descent or by an award for personal injury damages, with the rents, issues and profits thereof in which You are entitled to, have received, or may be named beneficiary, legatee, distributee, executor, trustee, or otherwise named.

13. All documents evidencing any interests in IRA, ERISA, Keogh, or other pension or profit sharing plans, including without limitation any 529 educational plan, in which You may be named beneficiary, legatee, distributee, executor, trustee, custodian, or otherwise named.

On January 10, 2013, Stacey filed this motion for a protective order on the grounds that plaintiff's RFPs subject her to annoyance, embarrassment, oppression, and undue burden or expense (#227, p. 1). Stacey asserts that plaintiff's broad requests for her personal financial documents do not appear reasonably calculated to lead to the discovery of admissible evidence regarding the judgment debtors' income and property. *Id.* at 1-2. Stacey also asserts that many of the requested documents can be obtained from "some other source that is more convenient, less burdensome, or less expensive." *Id.* at 2.

-5-

## II. DISCUSSION & ANALYSIS

### A. Relevant Law

Fed.R.Civ.P. 69(a)(2) governs discovery in judgment enforcement proceedings. *Internet Direct Response, Inc. v. Buckley*, No. SACV 09-01335 ABC (MLGx), 2010 WL 1752181, at *2 (C.D.Cal.April 29, 2010). The rule provides that a judgment creditor "may obtain discovery from *any* person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located." Fed.R.Civ.P. 69(a) (emphasis added). One purpose of post-judgment discovery is "to identify assets that can be used to satisfy a judgment." *Ryan Investment Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JW (RS), 2009 WL 5114077, at *1 (N.D.Cal.Dec. 18, 2009) (citation omitted). Another purpose is "to discover concealed or fraudulently transferred assets." *Id.* (citation omitted). The scope of post-judgment discovery is "very broad," *Henry v. Rizzolo*, No. 2:08-CV-00635-PMP-GWF, 2012 WL 13725, at *3 (D.Nev.Jan. 4, 2012), and the rule entitles a judgment creditor to "a very thorough examination of the judgment debtor." *Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 335 (E.D.Pa.1974) ("The presumption should be in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise enforce the judgment."). Although Fed.R.Civ.P. 69 can authorize the proverbial fishing expedition, a judgment creditor "is *entitled* to fish for assets of the judgment debtor." *Ryan Investment Corp.*, 2009 WL 5114077, at *4 (citations omitted) (emphasis in original).

A judgment creditor may obtain discovery from both parties and non-parties alike. *Henry*, 2012 WL 13727, at *3; *Caisson Corp.*, 62 F.R.D. at 335; *Alpern v. Frishman*, 465 A.2d 828, 829 (D.C.1983) (judgment creditor has the right to discover judgment debtor's hidden or concealed assets through discovery of third-parties). In general, a judgment creditor may inquire into a third-

party's knowledge of the debtor's finances and assets, but may not delve into the third-party's personal finances and assets. *Alpern*, 465 A.2d at 829. However, there are exceptions to this general rule. *See id.* ("Cases that have recognized exceptions to the general rule . . . have involved . . . factual circumstances in which it appeared that some transfer of assets from the judgment debtor to the third party actually had occurred."). In these cases, discovery which delves into a third-party's assets is permissible where the "relationship between the judgment debtor and the [third-party] is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y.1977) (citing *Caisson Corp.*, 62 F.R.D. at 335); *Alpern*, 465 A.2d at 829.

"Where spouses are involved, even a slight showing that there has been a transfer of property from the debtor spouse to the other spouse" may be sufficient for the court to allow a judgment creditor to delve into the personal assets of a third-party. *Alpern*, 465 A.2d at 829; *see also Falicia v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5, 9 (D.C.2006). However, the inquiry must "be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment . . . ." *Caisson*, 62 F.R.D. at 334 (citations omitted).

**B.    Analysis**

Plaintiff contends it is entitled to investigate the "bona fides" of any asset transfers between Nello and Stacey (#198, p. 16). Plaintiff argues that as Nello's wife, Stacey is the "quintessential insider," and that the Gonfiantinis amended their prenuptial agreement precisely at the time that Nello's financial empire was collapsing to "expedite certain other benefits to Stacey" (#198, p. 16; #264-2, Recital F (*sealed*)). Plaintiff also argues that its RFPs are not overly broad or unduly burdensome, but are "reasonably calculated to lead to the discovery of admissible evidence" in that

they seek information about assets which Nello may have improperly transferred to his wife (#198, p. 16). *See* Fed.R.Civ.P. 26(b)(1).

Stacey contends that as a non-party, she is not under the same discovery obligations as the judgment debtors (#227, p. 4). Stacey asserts that in order for a judgment creditor to discover a non-party's personal assets, the judgment creditor must establish two things: (1) a close relationship between the judgment debtor and the non-party, and (2) a fraudulent or bad faith transfer of assets between the judgment debtor and the non-party. *Id.* at 8. Stacey admits that she has a close relationship with judgment debtor Nello, as she is married to him. *Id.* at 9. However, Stacey argues that there is no evidence that her husband engaged in any fraudulent or bad faith transfer of assets. *Id.* Stacey also contends that plaintiff's RFPs do not appear reasonably calculated to lead to the discovery of admissible evidence regarding the judgment debtors' income and property; and that in light of her non-party status, responding to such requests would be unduly burdensome. *Id.* at 1-2, 6. She also avers that many of the documents plaintiff requests can be obtained from "some other source that is more convenient, less burdensome, or less expensive." *Id.*

Plaintiff replies that it is not required to establish evidence of a fraudulent or bad faith transfer of assets (#256, p. 4-5 (*sealed*)). Rather, pursuant to *Alpern*, plaintiff contends that a mere transfer of assets from the judgment debtor to his non-debtor spouse is sufficient to compel discovery of that spouse's assets. *Id.* Plaintiff also replies that even if it were required to establish a fraudulent or bad faith transfer of assets in order to compel discovery from the non-debtor spouse, here, such evidence exists. *Id.* at 5.

Stacey's position is that plaintiff's version of the standard to compel discovery from a non-debtor spouse is inaccurate, and that plaintiff must provide evidence that her husband transferred assets fraudulently, or in bad faith (#267, pp. 2-3 (*sealed*)). Stacey argues that plaintiff has not

produced the requisite evidence; and thus, plaintiff is not entitled to discover her separate assets. *Id.* at 5-11.  Finally, Stacey claims that she should not be compelled to produce documents relating to her husband's monthly transfer of $3000 of community property funds into her separate account. *Id.* at 11-12.

### 1. Discovery from a Judgment Debtor's Spouse

There are several persuasive cases from other jurisdictions which inform the court's opinion as to when a judgment creditor may compel discovery from a non-debtor spouse.  In *Alpern v. Frishman*, 465 A.2d 828 (D.C.1983), the judgment creditor wished to discover whether the judgment debtor had fraudulently conveyed assets to his wife in order to avoid attachment. *Id.* at 828.  At her deposition, the judgment debtor's wife answered questions concerning the couple's joint finances. *Id.* at 828-29.  However, she refused to answer questions concerning her personal finances. *Id.* at 829.  Thereafter, the judgment creditor moved the court for an order compelling the wife to testify regarding her personal finances. *Id.*  The trial court denied the motion on the grounds that the judgment creditor failed to make a sufficient showing that the judgment debtor had actually transferred any funds to his wife.[6] *Id.*  The District of Columbia Court of Appeals upheld the trial court's decision on the grounds that the judgment creditor had not shown that there had been a transfer of property from the judgment debtor to his wife. *Id.*

The court finds *Alpern* to be instructive, and yet, distinguishable from the present case.  The *Alpern* court acknowledged that "[w]here spouses are involved, even a slight showing that there had been a transfer of property from the debtor spouse to the other spouse could suffice to establish that discovery should be allowed.  Here there was no showing." *Id.*  In *Alpern*, the court denied the judgment creditor's motion to compel solely on the ground that there was no evidence that the

---

[6] The wife also executed an affidavit stating that she had received no funds from her husband. *Id.*

judgment debtor had transferred any funds to his wife. Here, there is no dispute that Nello transferred multiple assets to the Stacey Trust in both the First and Second Amendments to the Gonfiantinis' prenuptial agreement. Accordingly, the result in *Alpern* does not govern this case.

Another case which the court finds factually similar to the instant matter is *Internet Direct Response, Inc. v. Buckley*, No. SACV 09-01335 ABC (MLGx), 2010 WL 1752181 (C.D.Cal.April 29, 2010). In *Internet Direct*, the court ordered Corrine Buckley, the judgment debtor's wife, to appear for a third-party examination. *Id.* at *1. During questioning, Ms. Buckley asserted that the judgment creditor could not inquire into her personal assets because she did not hold any community property with her husband pursuant to two post-nuptial agreements. *Id.* Ms. Buckley also objected to the judgment creditor's requests for document production and moved the court for a protective order: "(1) prohibiting Plaintiff from requiring her to produce 'personal records' or 'personal financial records' related to 'her separate property' at the examination and (2) prohibiting Plaintiff from questioning her about 'her separate owned property' at the examination." *Id.*

The court stated that the fact that the Buckleys entered into two postnuptial agreements and filed separate tax returns did "not eliminate the Court's doubt regarding the validity of asset transfers between them." *Id.* at *4. The court noted that "[b]oth of the postnuptial agreements, which purport to separate the couple's property interests, were entered into at times when Mr. Buckley had incurred or was anticipating significant debt, raising questions about the motive for the transfer." *Id.* The court also pointed out that whether the Buckleys held any community property was a "legal determination for a court to decide once the parties have collected all of the relevant facts." *Id.* Thus, the court denied Ms. Buckley's motion for a protective order and ordered her examination to proceed. *Id.* at *5.[7]

---

[7] *See also Parkhurst v. Tabor*, No. 07-CV-2068, 2009 WL 1872793, at *2 (W.D.Ark. June 30, 2009) (court ordered

The court has analyzed the Gonfiantinis' prenuptial agreement, First Amendment and Second Amendment, and notes that these agreements make significant asset transfers from Nello to Stacey's Trust. Nello and Stacey have also admitted that each of the transfers referenced in their pre- and post-nuptial agreements actually occurred. The court finds that the creation of the two post-nuptial agreements "does not eliminate the [c]ourt's doubt" as to the propriety of Nello's asset transfers to his wife. *See Internet Direct*, 2010 WL 1752181 at *3. At the time the Gonfiantinis entered into the First Amendment, Nello had already defaulted under the terms of the Guaranty, and the possibility of future litigation was apparent. At the time the Gonfiantinis entered into the Second Amendment, plaintiff had filed its amended complaint, which added Nello as a co-defendant in this litigation. Nello was clearly apprised that a judgment may be entered against him for a substantial amount of money, and he would have been motivated to secure himself and his family against loss. In short, the timing of events "raises doubts about the propriety of the transfers," and the court finds that "plaintiff should be permitted further exploration." *See Magnaleasing*, 76 F.R.D. at 562 ("The scope of plaintiff's rights cannot be governed by agreement of his adversaries.").

Stacey asserts that plaintiff must establish that her husband transferred assets fraudulently or in bad faith in order to compel discovery of her alleged "separate" assets. The court disagrees. Discovery that delves into a third-party's assets is permissible where the "relationship between the judgment debtor and the [third-party] is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing*, 76 F.R.D. at 562 (citing *Caisson Corp.*, 62 F.R.D. at 335); *Alpern*, 465 A.2d at 829. The court need not determine whether Nello actually transferred assets to his wife fraudulently or in bad faith. Rather, the court need only decide whether the factual circumstances "raise a reasonable doubt" as to the propriety of Nello's asset transfers.

---

judgment debtor's wife to turn over her personal state and federal tax returns so that judgment creditors could determine to what extent judgment debtor and his wife had co-mingled assets that the wife claimed she owned separately).

*See id.* As stated above, the mere timing of the significant asset transfers involved in the First and Second Amendments, whether fraudulent or not, are "sufficient to raise a reasonable doubt" about their bona fides. Further, the court agrees that "[w]here spouses are involved, even a slight showing that there has been a transfer of property from the debtor spouse to the other spouse" is sufficient for the court to allow a judgment creditor to delve into the personal assets of the non-debtor spouse. *Alpern*, 465 A.2d at 829.

Stacey also asserts that plaintiff's RFPs subject her to annoyance, embarrassment, oppression, and undue burden or expense because they do not appear reasonably calculated to lead to the discovery of admissible evidence regarding the judgment debtors' income and property. The court recognizes that the inquiry into a non-party's personal assets must "be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment . . .." *Caisson*, 62 F.R.D. at 334 (citations omitted). However, the court also recognizes that the scope of post-judgment discovery is very broad, *Henry*, 2012 WL 13725, at *3, and "[t]he presumption should be in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise enforce the judgment." *Caisson Corp.*, 62 F.R.D. at 335. The court has reviewed plaintiff's RFPs and finds that they are reasonably calculated to lead to the discovery of admissible evidence concerning judgment debtor Nello's possible concealed assets. Further, the court finds no evidence that plaintiff's propounded RFPs will subject Stacey to undue annoyance, embarrassment or harassment.

Finally, Stacey asserts that she should not be compelled to produce documentation concerning the $3,000.00 of community property funds that her husband transfers into her account every month because it is more convenient for her husband to produce this discovery. The court disagrees. First, the court notes that whether an asset is labeled as community property or separate

property is a matter of law. *See Internet Direct*, 2010 WL 1752181, at *4. Second, the court fails to see how it would be more convenient for Nello to produce these records. Nello has stated that he has no custody or control of his wife's financial information, and the funds at issue are allegedly housed in Stacey's separate account. Therefore, plaintiff is entitled to obtain this discovery directly from Stacey.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff is entitled to obtain its requested discovery concerning Stacey's assets to aid plaintiff in locating judgment debtor Nello's assets.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel discovery from Stacey Gonfiantini (#198) is **GRANTED**.

**IT IS FURTHER ORDERED** that Stacey Gonfiantini's motion for protective order (#227) is **DENIED**.

Stacey Gonfiantini is **ORDERED** to fully respond to plaintiff's RFPs Nos. 1-7 and 12-13, and shall have until April 18, 2013, to produce the requested discovery.

**IT IS SO ORDERED.**

DATED: April 4, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**