**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

VFS FINANCING, INC., a Delaware Corporation,

        Plaintiff,

        vs.

SPECIALTY FINANCING CORP., a Nevada Corporation, and NELLO GONFIANTINI,

        Defendants.

3:09-cv-00266-RCJ-VPC

**ORDER**

Several post-judgment motions are currently pending before the Court: (1) Defendant Nello Gonfiantini's motion to reconsider the Court's orders requiring him to turn over: (a) an amount equal to all deposits made into his daughter's 529 education account after September 16, 2011, and (b) a tax refund received in 2012, (Mot. Recons., ECF No. 390); (2) Plaintiff VFS Financing's motion to enforce the 529 Order, (Mot. to Enforce, ECF No. 399); and (3) various unopposed motions to file the pending motions under seal, (ECF Nos. 389, 391, 393, 398, 404).

For the reasons stated herein, the motion to reconsider is denied, and the motion to enforce the 529 Order is granted. The Court likewise grants the motions to seal, finding that the subject filings contain information that has been identified as confidential in the Stipulated Protective Order entered on February 19, 2013, (ECF No. 269), and that the parties have therefore established good cause to seal.

## I. Background

On September 16, 2011, Plaintiff VFS Financing Inc. ("VFS") obtained a judgment against Defendants Specialty Financial Corp. ("Specialty Financial") and Nello Gonfiantini ("Nello"), jointly and severally, in the amount of $5.5 million (the "Judgment"). (ECF No. 113). Nello has repeatedly attempted to frustrate VFS's collection efforts. (*See, e.g.*, Order ¶ 30, ECF No. 385, at 7). These tactics have forced VFS to move for, among other things, a post-judgment injunction freezing Nello's assets, a turnover of the funds wrongfully transferred or deposited into his daughter's 529 education account (the "529 Account"), and a turnover of Nello's tax refund. During a hearing held on July 22, 2013, the Court orally granted these and other motions. (*See* Tr. of Proceedings, ECF No. 373). The Court also entered a minute order memorializing its oral rulings. (ECF No. 347).

On October 15, 2013, the Court entered various written orders, including: (1) an order requiring Nello to turn over an amount equal to all deposits or transfers made into the 529 Account after September 16, 2011 (the "529 Order"), (ECF 384); (2) an order requiring Nello to turn over his fall 2012 tax refund (the "Tax Refund Order") (collectively, the "Turnover Orders"), (ECF No. 386); and (3) a post-judgment injunction freezing Nello's non-exempt assets, (ECF No. 385). The Turnover Orders required Nello to pay the required amounts within thirty (30) days.

On October 29, 2013, counsel for Nello advised VFS that Nello would "pay the amounts required by the 529 Order on or before November 15, 2013," and that the "payment [would] be derived from [Nello's] exempt earnings." (Gunderson Email, Oct. 29, 2013, ECF No. 390-4, at

2). However, counsel also stated that Nello "[did] not have the ability to also pay the amounts required by the [Tax Refund Order] on or before November 15, 2013." (*Id.*).

In response, counsel for VFS inquired as to the source of the funds that Nello intended to use to satisfy the Tax Refund Order. (Harris Email, Oct. 30, 2013, ECF No. 390-5). Counsel for Nello responded, stating that Nello "anticipates that the payment of the amount owed pursuant to the [Tax Refund Order] . . . will be derived from [Nello's] exempt earnings." (Gunderson Email, Oct. 31, 2013, ECF No. 390-5). Shortly thereafter, VFS refused Nello's proposed stipulation for an extension of time to satisfy the Tax Refund Order. (Harris Email, Nov. 30, 2013, ECF No. 390-7).

On November 1, 2013, counsel for Nello sent VFS a letter with an enclosed $22,000 check, explaining that the check was to "serve as [Nello's] satisfaction, in full, of his obligation to pay VFS . . . an amount equal to the sums transferred or deposited into the [529 Account] after September 16, 2011." (Gunderson Letter, Nov. 1, 2013, ECF No. 399-1). In response, VFS argued that the $22,000 did not comply with the terms of the 529 Order. (Harris Email, Nov. 6, 2013, ECF No. 399-2).Then, in an effort to verify the exact amount owed under the 529 Order, VFS requested that Nello produce copies of all post-judgment statements for the 529 Account. (*Id.*). After further correspondence, Nello eventually produced the requested statements, (*see* Gunderson Email, Nov. 7, 2013, ECF No. 399-3), which show that the amount deposited during the relevant period totals $42,000, (Harris Email, Nov. 8, 2013, ECF No. 399-4). Nello does not dispute the $42,000 total. Instead, he contends that because he personally deposited only $22,000, his obligation under the 529 Order is limited to that amount. (*See* Opp'n to Mot.

Enforce, ECF No. 405, at 3–8). The additional $20,000 was deposited by the child's mother, Stacey Gonfiantini. (*Id.* (citing Stacey Gonfiantini Gift Letters, ECF No. 405-10)).

Nello now moves the Court to reconsider the deadline imposed in the Tax Refund Order. (Mot. Recons., ECF No. 390). Specifically, he seeks a sixty-day extension to pay the required sum. (*Id.*). VFS not only opposes Nello's motion to reconsider the Tax Refund Order, it also seeks an order requiring Nello to turn over $42,000 under the 529 Order. (Mot. to Enforce, ECF No. 399). The Court now considers the pending motions.

## II.  Motion to Reconsider (ECF No. 390)

Nello asserts that he was financially unable to simultaneously satisfy both of the Turnover Orders within the thirty-day deadline. (Mot. Recons., ECF No. 390, at 4–5). Thus, he continues, they will "operat[e] in an unjust manner" absent the requested extension. (*Id.* at 5). The Court finds this argument unpersuasive.

### A. Legal Standard

A court should be loathe to revisit its own decisions unless extraordinary circumstances show that its prior decision was clearly erroneous or would work a manifest injustice. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). This principle is embodied in the law of the case doctrine, under which "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)). Nonetheless, in certain limited circumstances, a court has discretion to reconsider its prior decisions.

While Rule 59(e) and Rule 60(b) permit a district court to reconsider and amend previous orders, this is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 James William Moore, et al., *Moore's Federal Practice* § 59.30(4) (3d ed. 2000)) (internal quotation marks omitted).

Indeed, a district court should not grant a motion for reconsideration "absent highly unusual circumstances, unless the court (1) is presented with newly discovered evidence, (2) committed clear error, or (3) if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (citing *Sch. Dist. No. 1J v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enter.*, 229 F.3d at 890. Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, is not grounds for reconsideration. *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981). A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). Furthermore, "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

## B. Analysis

Were the Court inclined to modify the Tax Refund Order, the requested extension would have expired on January 13, 2014. (*See* Mot. Recons., ECF No. 390, at 5). However, the Court finds such an extension unwarranted for two reasons: First, while Nello alleges that he was "not financially capable" of satisfying both the 529 Order and the Tax Refund Order before the thirty-day deadline, he conspicuously fails to explain why he was required to use future exempt earnings, rather than the funds in the 529 Account, which were, as explained more fully below, immediately available, to satisfy the 529 Order. Second, the Court entered a minute order granting the turnover motions on July 22, 2013, (*see* ECF No. 347), giving Nello clear notice of his obligations almost four months before the November 15 deadline. Because Nello has not satisfactorily shown that he was incapable of amassing the necessary funds within this period, the Court cannot conclude that it would be manifestly unjust to enforce the present deadline. Nello's motion to reconsider (ECF No. 390) is therefore denied.

## III. Motion to Enforce the 529 Order (ECF No. 399)

VFS contends that the 529 Order requires Nello to pay a total sum of $42,000, plus any monies deposited into the 529 Account between the entry and full satisfaction of the Judgment. The Court agrees.

The plain language of the 529 Order requires Nello to turn over an amount equal to *all* post-judgment deposits, regardless of their origin, into the 529 Account:

> Defendants are hereby ordered to disclose to Plaintiff, within thirty (30) days of the date of this Order, *all transfers or deposits* made into the Vanguard 529 Education IRA account . . . after September 16, 2011, and are further ordered to pay to Plaintiff or its attorneys, within thirty (30) days of the date of this Order, *an amount equal to the sums so transferred or deposited into said account.*

(529 Order, ECF No. 384, at 4 (emphasis added)). Under NRS 21.090, these funds are simply not exempt from execution:

> The following property is exempt from execution, except as otherwise specifically provided in this section or required by federal law: . . . Money, not to exceed $500,000 in present value, held in: . . . [a] trust forming part of a qualified tuition program pursuant to chapter 353B of NRS, any applicable regulations adopted pursuant to chapter 353B of NRS and section 529 of the Internal Revenue Code, 26 U.S.C. § 529, *unless the money is deposited after the entry of a judgment against the purchaser or account owner* . . . ."

Nev. Rev. Stat. § 21.090 (1)(r)(5) (emphasis added).

Significantly, the statute does not distinguish between deposits made by the account owner and those made by non-debtor third parties. Instead, it broadly provides that the exemption does not apply if "the money is deposited after the entry of judgment against . . . the account owner . . . ." *Id.* That there is no distinction related to the source of a particular deposit makes perfect sense: Once the funds are deposited into the account, they become the property of the account owner, who has complete authority to withdraw them, regardless of their source.

Here, Nello is the named owner of the 529 Account. Thus, any post-judgment deposits are his property. Under NRS 21.090(1)(r)(5), however, this property is non-exempt and therefore subject to execution. Accordingly, under the 529 Order, Nello must turn over an amount equal to all post-judgment deposits, regardless of their source.

Nello does not dispute that this amount presently totals $42,000. (*See* Opp'n to Mot. Enforce, ECF No. 405, at 5–6). Instead, citing *Brooksby v. Nevada State Bank*, 312 P.3d 501, 502 (Nev. 2013), he contends that because his daughter is the sole beneficiary of the 529 Account, he cannot be required to turn over funds deposited by others. (*See* Opp'n to Mot. Enforce, ECF No. 405, at 3–8). This argument is unpersuasive. As an initial matter,

7

*Brooksby* is inapplicable, because, unlike this case, it involved bank accounts allegedly held jointly by the judgment debtor and the judgment debtor's children. *Brooksby*, 312 P.3d 501. Under these facts, the Nevada Supreme Court held that the children were entitled to an opportunity to prove ownership and potentially avoid garnishment. *Id.* at 503. Notably, "the Brooksby children [did] not assert that the joint bank accounts were exempt from garnishment, but that the funds therein [were] not available to satisfy the demands of their parents' judgment creditors because the funds [did] not belong to their parents." *Id.* Here, however, it is undisputed that Nello is the sole owner of the 529 Account. In fact, Nello rightly concedes that "[a] Nevada 529 Account can have only one 'Beneficiary' and only one 'Account Owner.'" (Opp'n to Mot. Enforce, ECF No. 405, at 6 (citing Nev. Admin. Code § 353B.600(2) ("There may be only one account owner and one designated beneficiary for an account at any time."))). Accordingly, Nello alone has control over the funds deposited into the 529 Account, *see* Nev. Admin. Code § 353B.665, and his reliance on *Brooksby* is unavailing.

Nello's remaining arguments are likewise unpersuasive. To the extent that he claims that VFS somehow waived its right to seek an amount greater than his personal contribution to the 529 Account, (*see* Opp'n to Mot. Enforce, ECF No. 405, at 7–8), the Court disagrees, finding that nothing in the record supports such a conclusion. Finally, the Court rejects Nello's argument that it would be fundamentally unfair to require him to turn over an amount equal to the deposits made by others. (*See id.* at 8). As is evidenced by NRS 21.090(1)(r)(5), the Nevada Legislature has already concluded that the relief VFS seeks is permissible. Furthermore, to the extent that friends and family members

wish to continue funding Nello's daughter's education, they can avoid the reach of the 529 Order by simply establishing their own 529 accounts for her benefit. Therefore, VFS's motion is granted. Pursuant to the 529 Order, Nello is required to turn over $42,000 plus an amount equal to any future deposits made prior to the satisfaction of the Judgment.

## CONCLUSION

IT IS HEREBY ORDERED that the motions to file under seal (ECF Nos. 389, 391, 393, 398, 404) are GRANTED.

IT IS FURTHER ORDERED that Defendant's motion to reconsider (ECF No. 390) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion to enforce the 529 Order (ECF No. 399) is GRANTED. Within thirty (30) days of the entry of this order, Nello must turn over a total of $42,000 to remain compliant with the 529 Order. Nello must also turn over an amount equal to any future deposits made into the 529 Account prior to the full satisfaction of judgment.

IT IS SO ORDERED.

Dated: July 23, 2014

_____
ROBERT C. JONES
United States District Judge